**Not for Publication**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CARLOS GONZALEZ, | Civil Action No. 18-3765 |
| *Plaintiff*, | (JMV) (ESK) |
| v. | **OPINION** |
| ELIZABETH POLICE DEPARTMENT, JORGE HIDALGO, JOHN DOES 1-5, and JANE DOES 1-5, | |
| *Defendants*. | |

**John Michael Vazquez, U.S.D.J.**

Plaintiff was arrested and charged with driving while intoxicated after police found him in his vehicle.  Plaintiff, however, was not under the influence; he was in diabetic shock.[1]  Plaintiff alleges that the Elizabeth Police Department and individual officers violated his civil rights and committed other wrongs during his arrest and detention.  Presently before the Court are Defendant City of Elizabeth ("City" or "Elizabeth")[2] and Defendant Jorge Hidalgo's motions for summary

---

[1] Diabetic shock is used by Plaintiff, but it does not appear to be an actual medical term.  Instead, the condition is referred to as hypoglycemia (low blood sugar).  *Diabetic Coma*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/diabetic-coma/symptoms-causes/syc-20371475 (last accessed April 8, 2021).  The signs and symptoms of hypoglycemia may include shakiness or nervousness, anxiety, fatigue, weakness, sweating, hunger, nausea, dizziness or lightheadedness, difficulty speaking, and confusion.  *Id.*

[2] Plaintiff's Complaint improperly named the Elizabeth Police Department instead of the City of Elizabeth as a Defendant.  Although the case caption names "Elizabeth Police Department," the Court will refer to this Defendant as the City of Elizabeth.

judgment. D.E. 35, 36. The Court reviewed all submissions[3] made in support and opposition of the motions and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Defendant Hidalgo's motion is **GRANTED in part** and **DENIED in part**, and Defendant City of Elizbeth's motion is **DENIED**.

## I.     FACTUAL BACKGROUND[4] AND PROCEDURAL HISTORY

On October 16, 2016, Defendant Hidalgo, an officer with the Elizabeth Police Department, was working a patrol shift when he was flagged down by a couple who alerted him to a vehicle pointing in the wrong direction and leaning up against another car; the driver was in the driver's seat. DSOMF ¶¶ 1, 3. Hidalgo approached the car and observed Plaintiff "slumped over to the passenger seat." *Id.* ¶ 5. Hidalgo asked Plaintiff if he was alright, but Plaintiff was unable to answer. *Id.* Plaintiff was not wearing any medical alert bracelet or necklace. *Id.* Plaintiff's car was still running and in gear, but his foot was on the break. *Id.* ¶ 6. Hidalgo opened the driver's side door of the car and "noticed a strong smell of alcohol in the vehicle and also on . . . Plaintiff's breath." *Id.* ¶ 6. Plaintiff was mumbling and unable to communicate or respond to Hidalgo's

---

[3] The parties' briefs are as follows: (1) Plaintiff's Consolidated Opposition to Defendants' Motions for Summary Judgment, D.E. 40, will be referred to as "Pl. Opp."; (2) Defendant Jorge Hidalgo's Brief in Support of His Motion for Summary Judgment, D.E. 36-1, will be referred to as "Hidalgo Br."; (3) Defendant City of Elizabeth's Brief in Support of its Motion for Summary Judgment, D.E. 35-6, will be referred to as "City Br."; (4) Defendant Hidalgo's Reply Brief, D.E. 42, will be referred to as "Hidalgo Reply"; and (5) Defendant City of Elizabeth's Reply Brief, D.E. 41, will be referred to as "City Reply."

[4] The factual background is taken from Defendant Hidalgo's Statement of Undisputed Material Facts ("DSOMF"), D.E. 31-1, and Plaintiff's Response and Supplemental Material Disputed Facts ("PSOMF"), D.E. 32-1. The City of Elizabeth also submitted a Statement of Undisputed Material Facts, D.E. 35-5, which was identical to that submitted by Hidalgo. The City of Elizabeth states that it "adopts, incorporates and relies upon" Hidalgo's Rule 56 Statements of Undisputed Facts and Exhibits. D.E. 35-5 at ¶ 26. Additionally, Plaintiff's response to the City's Statement of Undisputed Material Facts, D.E. 33-1, is identical to its responsive submission to Hidalgo's submissions.

questions. *Id.* ¶ 8.  Hidalgo "determined Plaintiff was possibly drunk due to the odor of alcohol and the way Plaintiff was acting." *Id.* ¶ 10.  Officer Flatley arrived at the scene as backup, and Flatley and Hidalgo attempted to remove Plaintiff from his vehicle to arrest him for driving while intoxicated. *Id.* ¶ 11.

The parties dispute the circumstances surrounding Plaintiff's removal from the car. According to Defendants, the officers struggled to remove Plaintiff from the car because he "visibly resisted and hit the officers' hands." *Id.* ¶ 13.  Hidalgo continues that he and Flatley had to physically remove Plaintiff by lifting his legs out of the car because Plaintiff refused to get out of the vehicle. *Id.* ¶14.  Hidalgo further recounts that his body recorder was knocked to the ground during the struggle. *Id.* ¶ 15.  Because Plaintiff was "mumbling, groaning, fighting, and unable to stand on his own," the officers say that they were unable to perform field sobriety tests. *Id.* ¶ 16.

Plaintiff offers a different view.  First, Plaintiff notes that Hidalgo testified in his deposition that Plaintiff did not resist arrest.  PSOMF at ¶ 13.  Second, Plaintiff submits that he did not refuse to exit the vehicle – he was in diabetic shock. *Id.* ¶ 14.  Next, Plaintiff disputes that he "struggled with the police officers," and knocked off Hidalgo's body camera. *Id.* ¶ 15.  Plaintiff highlights that Hidalgo testified that his body worn recorder "fell off." *Id.*  Finally, Plaintiff disputes that Hidalgo was "unable to issue any field sobriety tests" and asserts that he did not fight with Hidalgo; instead, Plaintiff submits that Hidalgo did not attempt to administer any tests. *Id.* ¶ 16.

Officer Hidalgo provided a copy of his body cam recording, which the Court reviewed.[5] Hidalgo and Plaintiff converse, for the most part, in Spanish.  Neither party has provided the Court

---

[5] At the summary judgment stage, the Court may consider a videotape that is not alleged to be altered in any way, nor alleged to depict something different than what actually happened. *Scott v. Harris*, 550 U.S. 372, 378 (2007).  When such a recording exists, the Court views the facts in light of their depiction in the recording. *Id.* at 380-81.

with a certified translation of the conversation, so the Court does not consider the substance of the communications unless they are in English.  In addition, it does not appear from the footage that Plaintiff's vehicle (which appears to be a pickup truck) is abutting another vehicle.  As will be discussed, there is physical contact, but at no point during the interaction did the Court observe the officers or Plaintiff acting in a violent manner in the sense of throwing punches or attempting to hurt one another.

The footage and accompanying audio reflect the following (the noted times are from the recording itself, rather than the actual time of day of the interaction):

0:01-0:11 – Plaintiff is sitting back, somewhat slouched down, in the driver's seat.

0:14 – Hidalgo begins questioning Plaintiff.  Plaintiff responds but his voice is low and difficult to hear.  Plaintiff has his seat belt on, and his left hand initially rests on his stomach.  The officer's questioning and Plaintiff's responses (for the most part in a low almost mumbling, muttering manner although, on a few occasions, Plaintiff speaks louder) continue intermittently throughout the interaction.

1:05 – After answering Hidalgo, Plaintiff rests his head on his right hand, appearing as if he is going to sleep.

1:11 – Hidalgo throws an object on the roof of the vehicle, which creates a loud noise, to which Plaintiff responds by moving his head.

1:24 – Hidalgo opens the driver's side door.  Hidalgo is giving an instruction to Plaintiff.  Plaintiff raises his right arm in response but then puts his head down again.

1:34 – Hidalgo reaches in and seems to touch Plaintiff's left arm and seatbelt.  Plaintiff puts his hands on top of Hidalgo's hands (seemingly in an attempt to not be removed from the vehicle).  Hidalgo then attempts to physically move Plaintiff.  Plaintiff resists in the sense that he does not want to be moved.

1:47 – Plaintiff's hands are crossed against his chest, and Hidalgo attempts to move Plaintiff, which results in Plaintiff's shirt being pulled down below his left shoulder.

1:50 – Another officer (presumably Flatley) joins Hidalgo in attempting to move Plaintiff.  Plaintiff resists in that he tries to stay put and places his hands on the officers' hands.

1:57 – The officers are attempting to separate Plaintiff's arms.  Again, Plaintiff resists in the sense that he tries to stay put and hold onto the officers' hands.

2:05 – The other officer notes (in English) that Plaintiff is "all sweaty."

2:14 – Hidalgo has two hands on Plaintiff's right wrist.

2:21 – Hidalgo attempts to pull Plaintiff's left leg out of the car.

2:30 – Hidalgo reaches over the steering column and indicates (in English) that he took the key out (apparently in reference to the ignition key).

2:45 – One officer has hold of Plaintiff's right arm, and Hidalgo pulls Plaintiff's legs out of the vehicle.

3:00 – The officers remove Plaintiff from the vehicle, and Hidalgo handcuffs Plaintiff's right wrist.

3:02 – While standing in an unsteady manner, Plaintiff's right hand and shoulder come toward Hidalgo's body cam.  It is not clear from the footage whether Plaintiff intentionally made the move or stumbled.  Hidalgo's body cam falls to the ground.

3:16 – Hidalgo picks up the body cam and places it back on his person.

3:29 – Plaintiff is handcuffed (behind his back) and is near the bed portion of his vehicle. Plaintiff may be hunched over forward.

3:45 – Hidalgo tells Plaintiff (in English) that he needs to stand up.

4:08 – Plaintiff is placed into the back of a police vehicle.

Once Plaintiff was removed from his car, the officers transported him to the Elizabeth Police Department for processing.  DSOMF ¶ 17.  A medically trained police officer working in the cellblock believed that Plaintiff might be in diabetic shock and called for medical assistance. *Id.* ¶ 18.  Two other officers – Arias and Blanco – assisted Hidalgo with Plaintiff's arrest.  *Id.* ¶ 19.[6]

---

[6] The parties' statements of undisputed facts do not provide the first names of Officers Arias and Blanco.

Arias performed an Alcotest on Plaintiff, which showed that Plaintiff had a blood alcohol concentration ("BAC") of 0.0; there was no alcohol in Plaintiff's system. *Id.* ¶ 20. After learning of the 0.0 Alcotest reading, Hidalgo consulted with his supervisor, Sergeant Vazquez, about charging Plaintiff for driving while intoxicated ("DWI"). *Id.* ¶¶ 21-22. Vazquez instructed Hidalgo to proceed with the DWI charge and explained that the court would dismiss the charge if appropriate. *Id.* ¶ 23. A municipal court ultimately dismissed Plaintiff's DWI charge. *Id.* ¶ 24.

On or around December 12, 2016, Plaintiff filed a Notice of Tort Claim, which indicated that while he was suffering a medical emergency, he was arrested and prosecuted for no legitimate reason. *Id.* ¶ 25. The Notice of Tort Claim did not name Officer Hidalgo, however, it named the "Officers on Case No. 16-095357." *Id.*; PSOMF ¶ 26.

Plaintiff filed a Complaint against Elizabeth and Hidalgo, John Does 1 through 5, and Jane Does 1 through 5 (collectively the "PO Defendants") on March 19, 2018. D.E. 1. The Complaint contains fourteen counts: (1) violation of 42 U.S.C. § 1983 ("Deprivation of Rights"); (2) violation of 42 U.S.C. § 1981 ("Violation of Equal Rights Under the Law"); (3) violation of 42 U.S.C. § 1985 ("Conspiracy to Violate Civil Rights"); (4) violation of 42 U.S.C. § 1986 ("Failure to Prevent Violations of Civil Rights"); (5) violation of 42 U.S.C. § 1983 ("Negligent Screening, Hiring, Training, Supervision and Retention of Dangerous Discriminatory Police Officers"); (6) "New Jersey State Civil Rights Action/State Constitutional Claim" (N.J.S.A. 10:6-1 *et seq.*); (7) willful disregard; (8) assault and battery; (9) abuse of process; (10) false arrest; (11) false imprisonment; (12) malicious prosecution; (13) negligence; and (14) vicarious liability. *Id.* ¶¶ 44-110. Elizabeth and Hidalgo each filed Answers. D.E. 6, 7. On June 16, 2020, Defendants were granted leave to file motions for summary judgment. D.E. 34.

## II.      SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment.  *Id.*  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)).  A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).  To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party.  *Anderson*, 477 U.S. at 250.  "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the

court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.  "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

## III.   ANALYSIS

### A.  Claims Plaintiff Dismisses Voluntarily

Plaintiff indicates in his opposition brief that he "is electing not to proceed" with his claims arising under 42 U.S.C. § 1985 (Count Three); 42 U.S.C. § 1986 (Count Four); willful disregard (Count Seven) assault and battery (Count Eight); and abuse of process (Count Nine).  Pl. Opp. at 5.  As a result, this Court dismisses Counts Three, Four, Seven, Eight, and Nine.

### B.  Hidalgo's Motion for Summary Judgment

Of Plaintiff's remaining claims, Counts One, Two, Six, Seven, Ten, Eleven, Twelve, and Thirteen appear to be asserted against Defendant Hidalgo.  Hidalgo's motion for summary judgment does not precisely identify the counts on which he seeks summary judgment.  His brief does not explicitly reference many of Plaintiff's claims but includes sweeping references to "constitutional claims," Hidalgo Br. at 3, and "tort claims," *id.* at 4.  Separately from "tort claims," Hidalgo also discusses "common law claims," which apparently includes false arrest, false imprisonment, and malicious prosecution. *Id.* at 7.  Based on these statements, and the specific claims referenced in the moving papers, the Court interprets Hidalgo's motion as seeking summary judgment on Counts One, Six, Seven, Ten, Eleven, and Twelve – all the claims raised against

Hidalgo except for Counts Two and Thirteen.[7]  The Court also notes that Hidalgo's brief indicates that he seeks summary judgment on "Plaintiff's claim for intentional infliction of emotional distress," but Plaintiff asserts no such claim.  Hidalgo Br. at 9.

### 1. Constitutional Claims Arising Under § 1983 and the New Jersey Civil Rights Act (Counts One, Six, and Twelve)

Plaintiff brings several § 1983 claims against Hidalgo.  Section 1983, in relevant part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 does not provide substantive rights; rather, it provides a vehicle for vindicating violations of other federal rights.  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  To state a § 1983 claim, a plaintiff must demonstrate that "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law."  *Burt v. CFG Health Sys.*, No. 15-2279, 2015 WL 1646849, at *2 (D.N.J. Apr. 14, 2015).

Plaintiff also alleges a violation of the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-1, *et seq.*  Like Section 1983, the NJCRA affords a private cause of action to

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been

---

[7] Although Count Thirteen, negligence, would appear to fit within the "tort claims" category Hidalgo identifies, his brief only discusses intentional torts, and the Court therefore construes his motion to apply to willful disregard, assault and battery, abuse of process, false arrest, false imprisonment, and malicious prosecution.  Hidalgo certainly does not discuss the elements of negligence or why he would be entitled to summary judgment on the count.

interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law.

N.J. Stat. Ann. § 10:6-2.  The NJCRA "was intended to provide New Jersey citizens with a state analogue to Section 1983 actions."  *Perez v. Zagami, LLC*, 94 A.3d 869, 877 (N.J. 2014).  Courts look to § 1983 when analyzing claims arising under the NJCRA.  *Tumpson v. Farina*, 95 A.3d 210, 225 (N.J. 2014).  As a result, this Court will consider Plaintiff's §1983 and NJCRA claims together.

Hidalgo argues that he is entitled to qualified immunity.  The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Courts may first address either of the two prongs – constitutional violation or clearly established.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity."  *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002).

Qualified immunity "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably" and it "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  *Id.* (internal quotation omitted).  Properly

10

applied, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Saucier*, 533 U.S. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Couden v. Duffy*, 446 F.3d 483, 492 (2006).  "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity.  *Id.* (internal citations omitted).  Further, "[i]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized."  *Malley*, 475 U.S. at 341 (1986); *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (the general touchstone is whether the conduct of the official was reasonable at the time it occurred).  Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant.  *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 142, n.15 (3d Cir. 2001).

Count One of the Complaint alleges § 1983 violations for a multitude of actions that Plaintiff argues violated his constitutional rights:

> (a) stopping and detaining Plaintiff without reasonable and articulable suspicion; (b) falsely arresting Plaintiff without probable cause; (c) illegally searching Plaintiff's person without probable cause; (d) using excessive and unreasonable force when arresting Plaintiff; (e) falsely imprisoning and/or detaining Plaintiff; (f) improperly denying Plaintiff's right to privacy; (g) denying Plaintiff his right to freedom of travel; (h) depriving Plaintiff of his right to due process; (i) depriving Plaintiff of his right to equal protection of the laws; (j) subjecting Plaintiff to involuntary servitude; and (k) subjecting Plaintiff to cruel and unusual punishment.

Compl. ¶ 46.

As discussed, § 1983 does not provide substantive rights and cannot function as a standalone claim – it is a mechanism for vindicating violations of constitutional rights. Each alleged constitutional violation should have been set forth in a separate count. However, because Defendants did not object to the form of the pleading, the Court addresses the litany of alleged violations here. Similarly, Plaintiff alleges a variety of violations of the NJCRA and New Jersey Constitution, including that Defendants "discriminate[d], use[d] unlawful force, falsely stop[ped], arrest[ed] and detain[ed], and illegally search[ed] and assault[ed]" him, and denied him his rights to travel, equal protection, and privacy. *Id.* ¶ 67. The Complaint states that Plaintiff's rights under "Article I, Section 1; Article I, Section 5; Article I, Section 7" of the New Jersey Constitution were violated.[8] *Id.*

As to Counts One and Six, Hidalgo argues that "Plaintiff's claims are barred as there are no underlying constitutional claims" but provides no further explanation or analysis of any specific constitutional claims; that "Plaintiff's claim for malicious prosecution under, § 1983 fails, as a matter of law"; and that he is entitled to qualified immunity. Hidalgo Br. at 3, 10, 12. In opposition, Plaintiff state that he suffered three types of § 1983 violations: false arrest and imprisonment, falsification of evidence, and malicious prosecution. Pl. Opp. at 6. While this list arguably eliminates many of the Count One subparts pled in the Complaint, Plaintiff fails to expressly indicate that he "is electing not to proceed" with any subpart of Count One. *See id.* at 5. And, as noted, Plaintiff did expressly indicate that he was not proceeding with Counts Three, Four, Seven, Eight, and Nine. As a result, the Court will address each subpart raised in the Complaint.

---

[8] Article I of the New Jersey Constitution is not divided by sections; rather, it is divided by numbered paragraphs. The Court construes Plaintiff's allegations to reference paragraphs 1, 5, and 7 of Article I.

### 1.  Subparts of Counts One and Six that Hidalgo Does Not Analyze

At the outset, the Court notes that there are several claims raised in the Complaint against Hidalgo that Hidalgo fails to analyze or otherwise address in his moving papers.  As previously noted, Plaintiff's § 1983 claim (Count One) and NJCRA claim (Count Six) allege that many of his rights under the United States and New Jersey constitutions were violated.  Hidalgo's briefing in support of his motion for summary judgment fails to reference or otherwise discuss many of these alleged deprivations of Plaintiff's rights.  With respect to Count One, Hidalgo does not analyze the following claims: "(c) illegally searching Plaintiff's person without probable cause";  (d) "using excessive and unreasonable force when arresting Plaintiff'"; (f) "improperly denying Plaintiff's right to privacy"; (g) "denying Plaintiff his right to freedom of travel"; (h) "depriving Plaintiff of his right to due process"; (i) "depriving Plaintiff of his right to equal protection of the laws"; (j) "subjecting Plaintiff to involuntary servitude"; and (k) "subjecting Plaintiff to cruel and unusual punishment."   As to Count Six, Hidalgo does not address the following alleged deprivations: discrimination; unlawful search; use of unlawful force; assault; and violations of Plaintiff's rights to travel, privacy, and equal protection.

While Hidalgo may have been entitled to summary judgment on these claims, he has provided nothing more than the conclusory argument that "there are no underlying constitutional claims."  Hidalgo Br. 3-4.  Hidalgo fails to discuss the law or the facts with respect to these claims – his moving papers do not even provide the elements of these alleged deprivations of rights.  As a result, the Court does not grant summary judgment on these claims.

### 2.  Stop and Detention

The Court next considers Plaintiff's claim that Hidalgo stopped and detained him without reasonable and articulable suspicion, alleged in subpart a of Count One and in Count Six.  An

investigatory traffic stop requires only a "minimal level of objective justification." *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d. Cir. 2006). "Consistent with the Fourth Amendment of the United States Constitution and its analog, Article I, paragraph 7 of the New Jersey Constitution, 'a police officer is justified in stopping a motor vehicle when he has an articulable and reasonable suspicion that the driver has committed a motor vehicle offense.'" *State v. Golotta*, 837 A.2d 359, 363 (N.J. 2003) (quoting *State v. Locurto*, 724 A.2d 234, 238 (1999)). "Reasonable, articulable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.'" *Id.* (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

The undisputed facts demonstrate that prior to approaching Plaintiff's car, Hidalgo was flagged down by a couple who alerted him that a vehicle was facing the wrong way and leaning up against another car, and that the driver was in the driver's seat. DSOMF ¶ 3. When Hidalgo approached the vehicle, he saw Plaintiff "slumped over" the passenger's seat. *Id.* ¶ 5. Plaintiff's car was still running, and his foot was on the break. *Id.* ¶ 6. Plaintiff was unresponsive and unable to answer Hidalgo's questions. *Id.* ¶ 5. While the undisputed facts demonstrate that Hidalgo had reasonable articulable suspicion that Plaintiff committed a motor vehicle offense, the Court need not reach the issue because Plaintiff was in Hidalgo's plain view. Here, the undisputed facts, as well as the body cam recording, show that Hidalgo was on a public street – a place where he was legally entitled to be. *See* DSOMF ¶¶ 1-4. As he approached the car, Hidalgo was able to readily observe Plaintiff and his demeanor. *Id.* ¶ 5. Because Plaintiff's potentially unlawful conduct was in Hidalgo's plain view, Hidalgo's observation and seizure of Plaintiff's car did not violate Plaintiff's privacy rights. As a result, the Court finds that Hidalgo did not violate Plaintiff's Fourth Amendment (or New Jersey Constitutional) rights with respect to the initial stop and detention.

Because Plaintiff's rights were not violated, Hidalgo is entitled to qualified immunity on the initial stop and detention. The Court therefore grants summary judgment for Hidalgo on subpart a of Count One and on Count Six insofar as it challenges the stop and detention.

### 3. False Arrest and False Imprisonment

With respect to Plaintiff's claims for false arrest, Hidalgo argues that he is entitled to the defense of qualified immunity because the facts available to him at the time of Plaintiff's arrest provided "a more than objectively reasonable belief that Plaintiff was intoxicated and should be arrested." Hidalgo Br. at 16. Whether Hidalgo violated Plaintiff's constitutional rights by arresting, searching, imprisoning, and/or detaining him hinges on whether Hidalgo had probable cause to arrest Plaintiff. *See Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (explaining that "summary judgment for false arrest . . . is proper only if no reasonable juror could find a lack of probable cause for any of the charged crimes"). "To bring a claim for false arrest, a plaintiff must establish '(1) that there was an arrest; and (2) that the arrest was made without probable cause.'" *Id.* at 199 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012)). "The determination of whether there was probable cause to arrest requires a 'common sense approach' based on 'the totality of the circumstances.'" *Slippi-Mensah v. Mills,* No. 15-7750, 2020 WL 3468039, at *6 (D.N.J. June 25, 2020) (quoting *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997)). Under New Jersey law, a person is guilty of driving while intoxicated if he "operates a motor vehicle while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug, or operates a motor vehicle with a blood alcohol concentration of 0.08% or more[.]" N.J. Stat. Ann. § 39:4-50.

Hidalgo argues he had probable cause to investigate based on the following: Plaintiff's vehicle was "going the wrong way on a one way street"; Plaintiff refused to answer questions and

was uncooperative; Plaintiff was rambling and incoherent; Plaintiff was unable to perform field sobriety tests; and Hidalgo "smelled the odor of alcohol emanating from" Plaintiff.  Hidalgo Br. at 16.  Based on the body cam footage, there is no genuine dispute that that Plaintiff's vehicle was facing the wrong direction; that Plaintiff was leaning back the passenger's seat; that at certain times Plaintiff looked like he was dozing off; that Plaintiff at times did not respond to Hidalgo's questioning; and that when  Plaintiff did respond to questioning, he often did so in a mumbling and muttering manner.  *See* D.E. 36-2.  Nevertheless, other material facts upon which Hidalgo relies for probable cause are in dispute.  Most importantly, Plaintiff disputes Hidalgo's assertion that he "noticed a strong smell of alcohol in the vehicle and also on the Plaintiff's breath."  *Id.* ¶ 7.  Plaintiff argues that Hidalgo either lied about smelling alcohol or that he made an unreasonable mistake in believing he smelled it.  Pl. Opp. at 10-11.[9]  In support of this position, Plaintiff notes that no alcohol was found in the car, the Alcotest showed that there was no alcohol in Plaintiff's system, and no other officers who interacted with Plaintiff smelled alcohol.  *Id.* at 10, 13.  Hidalgo does not present evidence explaining why he may have otherwise smelled what seemed to be alcohol.  Additionally, the parties appear to dispute the reason why Plaintiff did not complete field sobriety tests.  Hidalgo suggests that Plaintiff refused to perform the tests and cites to New Jersey case law demonstrating that refusal to perform these tests permits the inference of guilt on a DWI charge.  Hidalgo Br. at 8.  Alternatively, Plaintiff posits that Hidalgo "made no attempts to administer any field sobriety tests before arresting" him.  Pl. Opp. at 2.  The relevant portion of Hidalgo's body cam does not reveal which position is accurate because, at the time, Hidalgo's

---

[9] Plaintiff also seems to raise a new § 1983 claim in his opposition, alleging fabricated evidence. Because "new claims cannot be raised in a summary judgment brief," this claim is not properly before the Court.  *Fanor v. Univ. Hospital-UMDNJ*, No. 16-320, 2020 WL 6938381, at *8, n.12 (D.N.J. Nov. 25, 2020).

body cam had fallen to the ground.  These disputed facts are material to the probable cause analysis.[10]

"[T]he right to be free from arrest without probable cause . . . is a bedrock constitutional principle and a clearly established right."  *Mazuka v. Rice Twp. Police Dep't*, 655 Fed. App'x 892, 894 (3d Cir. 2016).  Because the right is clearly established, and because there are genuine disputes of material fact as to whether Hidalgo had probable cause, the Court denies Hidalgo's motion for summary judgment as to the portions of Counts One and Six alleging unlawful arrest.  As for the false imprisonment claim, when "the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest."  *Id.* at 202 (quoting *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)).  As a result, with respect to subparts b and e of Count One, as well as the portions of Count Six alleging an unlawful arrest and false imprisonment, Hidalgo's motion for summary judgment is denied.

### 4.  Malicious Prosecution

In Count Twelve of the Complaint, Plaintiff alleges malicious prosecution, which the parties have construed as arising under § 1983 as well as the common law.  Hidalgo Br. at 10; Pl. Opp. at 15.  With respect to the § 1983 charge, Hidalgo argues that Plaintiff's malicious prosecution claim fails as a matter of law because there was probable cause to arrest Plaintiff. Hidalgo Br. at 10.

To prevail on a malicious prosecution claim under the Fourth Amendment,

> a plaintiff must show: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the

---

[10] Hidalgo does not argue that even if certain facts are discounted (such as the alleged smell of alcohol on Plaintiff's breath and stemming from the vehicle), he nevertheless had probable cause to arrest Plaintiff.  As a result, the Court does not conduct this analysis.

> plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."

*Black v. Montgomery Cty.*, 835 F.3d 358, 364 (3d Cir. 2016) (quoting *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007)).

As discussed above, there is a genuine dispute of material fact as to whether Hidalgo had probable cause to arrest Plaintiff. Moreover, even if Hidalgo had probable cause at the time he made the arrest, the undisputed facts in the record demonstrate that before Hidalgo charged Plaintiff, he learned that Plaintiff might be in diabetic shock and that the result of the Alcotest was a BAC of 0.0. DSOMF ¶¶ 18, 20. Nonetheless, Hidalgo was instructed to, and did, charge Plaintiff with DWI. Additionally, it is undisputed that the municipal court dismissed the charges against Plaintiff. *Id.* ¶¶ 20-24. As genuine disputes of material fact exist, the Court denies Hidalgo's summary judgment as to malicious prosecution.

Insofar as Hidalgo intended his qualified immunity argument to apply to this Count, the Court finds it premature to make such a finding because probable cause is an essential component to the first part of the analysis – whether Hidalgo violated Plaintiff's constitutional right. Pursuant to the second prong of the analysis, the right to be free from malicious prosecution is clearly established. *James v. Price*, 602 F. Supp. 843, 846-47 (D.N.J. 1985).

### 5. Tort Claims (Counts Ten, Eleven, and Twelve)

Hidalgo argues that Plaintiffs Claims for false arrest (Count Ten), false imprisonment (Count Eleven) and malicious prosecution (Count Twelve) fail for three reasons: (1) they are barred by the new Jersey Tort Claims Act (NJTCA) for failure to comply with the law's notice requirements; (2) they are barred by the NCTCA for failing to meet the verbal threshold; and (3) they are substantively barred by the existence of probable cause. Hidalgo Br. at 4-9. The Court has already rejected Hidalgo's argument as to probable cause. And Hidalgo's second argument is

not properly before the court.[11]   The analysis below addresses Hidalgo's remaining argument concerning the NJTCA compliance requirements.

Hidalgo contends that Plaintiff did not comply with the notice provision of the NJTCA because Hidalgo was not named in Plaintiff's Notice of Tort Claim form.  Hidalgo Br. at 4-6.  A party that asserts a tort claim seeking damages from a public entity or employee must comply with the NJTCA, which "establishes the procedures by which [such] claims may be brought." *D.D. v. Univ. of Med. & Dentistry of N.J.*, 61 A.3d 906, 917 (N.J. 2013) (quoting *Beauchamp v. Amedio*, 751 A.2d 1047, 1049 (N.J. 2000)).  One requirement is that a plaintiff must file a notice of claim that, among other things, provides "the date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted"; "[a] general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim"; and "[t]he name or names of the public entity, employee or employees causing the injury, damage or loss, if known."  N.J. Stat. Ann. § 59:8-4.  The TCA notice requirement, however, "is not intended as 'a trap for the unwary.'" *Lebron v. Sanchez*, 970 A.2d 399, (N.J. Super. Ct. App. Div. 2009) (quoting *Lowe v. Zarghami*, 731 A.2d 14, 27 (N.J. 1999)).  Therefore, "substantial rather than strict compliance with the notice requirements of the Act may satisfactorily meet the statute's mandates." *Id.*

---

[11] Pursuant to the Court's June 16, 2020 Order, D.E. 34, Defendants were instructed that their motions for summary judgment would be limited to the issues raised in their respective letters requesting leave to file motions for summary judgment.  The Court cautioned that if Defendants raised additional issues in their motions, they would be disregarded.  Hidalgo's letter requesting leave to file for summary judgment, D.E. 31, argued that "Plaintiff's tort claims are barred by N.J. Tort Claims Act," but only raised the insufficient notice argument, not the verbal threshold argument.  Hidalgo did not seek leave to raise additional arguments, nor has he shown good cause for failing to raise the issue in his letter requesting leave to file a motion for summary judgment. As a result, the Court declines to consider Hidalgo's new argument that Plaintiff failed to meet the NJTCA's verbal threshold.

New Jersey courts have held that "when the identity of the employee or employees was nearly as clear from the designation or description provided as it would have been by the inclusion of his or her name," a claimant cannot be barred from suit. *Henderson v. Herman*, 862 A.2d 1217 (N.J. Super. Ct. App. Div. 2004). In *Henderson*, the Appellate Division overruled a trial court's order barring a plaintiff's tort claims against individual defendants because the plaintiff's notice of tort claim did not specifically name them, and they were not served. *Id.* at 1219, 1221. The court reasoned that it could not "accept that it was the intention of the Legislature that a claimant be barred from suit for such a slight omission." *Id.* at 1222. Further, the court rejected the defendants' argument to literally construe N.J. Stat. Ann. 59:8-4(e)'s language that the claim shall include "[t]he name or names of the public . . . employee . . . if known," finding that such a construction would be "inconsistent with the overall purpose" of the NJTCA. *Id.* at 1223. The Appellate Division explained that

> we do not consider it fatal to a claimants' right to proceed that the claimants identified the public employees in a descriptive manner, rather than by reciting to the public entity the names disclosed in materials provided to them by that public entity pursuant to the court order. The description provided, together with the disclosed time and place of the occurrence, leave no room for mistake or confusion as to the identity of the involved employees.

*Id.*

The parties do not dispute that Plaintiff filed a Notice of Tort Claim on or around December 12, 2016, which was received by Elizabeth on or around December 15, 2016. DSOMF ¶ 25. The form indicates that Plaintiff was suffering a medical emergency and was arrested and prosecuted for no legitimate reason. *Id.* The form does not name Hidalgo, *id.*, however, in response to Question 5, which asks for "[t]he name(s) of the public entity/entities and/or employee(s) causing the alleged injury, damage or loss if known," Plaintiff listed: "EPD; Officers on Case No. 16-

095357." PSOMF ¶ 26; D.E. 36-2 at 34. The form also includes the date of the incident. D.E. 36-2 at 34.

The parties dispute whether this description on the form was sufficient to clearly indicate that tort claims were alleged against Hidalgo. Hidalgo argues that this description "leaves room for confusion" because Plaintiff could be complaining about the officer who operated the Alcotest, or other individuals at the scene of the arrest or at police headquarters. Hidalgo Br. at 6. Plaintiff contends that this description is specific enough to be valid under the NJTCA's requirements. Pl. Opp. at 21-22. The Court concludes that under *Henderson*, the notice of tort claims form was sufficient. Hidalgo was clearly an Officer on Plaintiff's case and, therefore, Plaintiff's description adequately identified him. In fact, Hidalgo appears to have been the primary officer involved in Plaintiff's arrest. Summary judgment is denied with respect to Plaintiff's alleged failure to comply with the NJTCA's notice requirement.

### C. City of Elizabeth's Motion for Summary Judgment

Of the remaining claims that Plaintiff has not voluntarily dismissed, Counts Two, Five, Six, Thirteen, and Fourteen appear to be brought against Elizabeth. Like Hidalgo's motion, the City's moving papers do not specifically articulate upon which claims the City seeks summary judgment; however, the City's request for leave to file a motion for summary judgment referred only to Counts Five, Six, and Fourteen. The Court therefore interprets the City to seek summary judgment on these counts.

### 1. Plaintiff's Civil Rights Claims (Counts Five, Six)

Plaintiff brings both a § 1983 and a NJCRA claim against Elizabeth, alleging that it was "negligent in screening, hiring, training, supervision, disciplining, and/or retaining the PO Defendants" because the City "knew or should have known [these Defendants] were dangerous

and/or acted in a racially discriminatory manner." Compl. ¶ 64.  For the reasons discussed above, the  § 1983 and NJCRA claims will be analyzed together.

The City first argues that if the Court grants Hidalgo's motion and finds that there were no underlying constitutional violations, then it must also grant Elizabeth's motion.  City Br. at 3. Without finding an underlying constitutional violation, Elizabeth argues that it cannot be held liable under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).  *Id.* at 4.  In the alternative, the City asserts that Plaintiff's civil rights claims must be dismissed as a matter of law because Plaintiff has failed to prove a policy or custom that amounted to a violation of Plaintiff's constitutional rights and, relatedly, Plaintiff has failed to demonstrate a failure to train and/or supervise Hidalgo.  *Id.* at 7-10.

The Court has concluded that Plaintiff did not suffer a violation of his constitutional rights with respect to his stop and detention; as a result, that alleged deprivation cannot serve as the basis for a § 1983 or NJCRA claim against the City.  However, the Court also denied Hidalgo's motion for summary judgement with respect to the § 1983 claims for: false arrest, illegal search; use of excessive force; false imprisonment; deprivation of rights to privacy, travel, due process, and equal protection; involuntary servitude; cruel and unusual punishment; and malicious prosecution.  The Court also denied summary judgment for Plaintiff's NJCRA claims implicating unlawful arrest and detention; an illegal search; use of unlawful force; assault; discrimination, and violations of Plaintiff's rights to travel, privacy, and equal protection.  Because the Court failed to determine that Plaintiff suffered no violations of these rights, these alleged deprivations could be bases to hold the City liable under § 1983 or the NJCRA.

While a municipality may be liable under § 1983, it cannot be held liable under a theory of *respondeat superior*.  *Monell*, 436 U.S. at 691.  "A municipality may only be held liable under §

1983 if the plaintiff identifies a municipal 'policy' or 'custom' that was the 'moving force' behind the injury." *Jewell v. Ridley Twp.*, 497 Fed. App'x 182, 185 (3d Cir. 2012) (quoting *Monell*, 436 U.S. at 694). "In other words, the plaintiff must show that the municipality, through one of its policymakers, affirmatively proclaimed the policy, or acquiesced in the widespread custom, that caused the violation." *Noble v. City of Camden*, 112 F. Supp. 3d 208, 221 (D.N.J. 2015). "A plaintiff may show the existence of a *policy* when a decision-maker with final authority issues an official proclamation, policy, or edict." *Id.* (emphasis added). And "a *custom* may be established by showing that a given course of conduct, 'although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (emphasis added) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). "In either instance, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

As to law enforcement training, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) (internal quotations, citations, and brackets omitted).

Additionally, a plaintiff must show that the unlawful policy or custom was the proximate cause of the plaintiff's injuries.  On this point, the United States Supreme Court has observed the following:

> As our § 1983 municipal liability jurisprudence illustrates, however, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Board of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *see also Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007); *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

A police department may have an adequate policy or practice, or a sufficient training program, but may nevertheless still fall constitutionally short if it fails to recognize the deficiencies of a particular officer.  A department and its superiors are generally charged with notice of an individual officer's shortcomings based on the officer's "pattern of similar constitutional violations[.]"  *Thomas*, 749 F.3d at 223.  For example, in *Beck v. City of Pittsburgh*, 89 F.3d 966 (3d Cir. 1996), the Third Circuit noted five excessive force complaints in five years against one officer.  Because those five complaints were "in a narrow period of time and . . . of similar nature, a reasonable jury could have inferred that the Chief of Police knew, or should have known, of [the officer's] propensity for violence when making arrests."  *Id.* at 974.  Similarly, in *Worrall v. City of Atl. City*, No. 11-3750, 2013 WL 4500583 (D.N.J. Aug. 20, 2013), an officer "was the subject of twenty-one complaints. . . . Of the twenty-one, fifteen complaints are characterized as having involved either excessive force or some level of assault." 2013 WL 4500583, at *3.  The number of complaints and the similarity of the allegation sufficiently put the department on notice of the officer's potentially unconstitutional behavior.  *Id.* at *4.  Similarly, in *Noble*, the court denied

summary judgment when the plaintiff presented evidence that two officer defendants who had accumulated 19 excessive force complaints, "had been flagged for monitoring and supervision[,]" and "that past complaints against the officers had not been timely or properly investigated." 112 F. Supp. 3d at 224.

Here, Plaintiff asserts two distinct theories of *Monell* liability: (1) whether the City maintained a custom or policy of charging arrested individuals with a crime, even if probable cause was lacking; and (2) whether the City's failure to properly train and supervise officers resulted in a violation of Plaintiff's rights.

### a.  Custom or Policy

The City argues that "Plaintiff has not provided any evidence of any particular policy, custom, or practice that resulted in the alleged violation of his constitutional rights" and has therefore failed to establish the existence of a government policy or custom. City Br. at 9. Plaintiff responds that the City maintained an "illegal ongoing custom of charging arrested individuals with a crime, regardless of probable cause," which resulted in a violation of his rights. Pl. Opp. at 25. In support, Plaintiff points to Hidalgo's testimony that in the Elizabeth Police Department, once an individual is arrested, an officer is "not allowed to stop moving ahead with a criminal prosecution." D.E. 35-4, 67:1-7. Hidalgo acknowledged that even with irrefutable evidence that a suspect is not guilty of the crime for which he was arrested, the officer must file the charges. *Id.* at 67:13 to 68:11. Plaintiff further emphasizes that two of Hidalgo's supervisors, Sergeant Ralph

Vazquez and "Mike Lewinski,"[12] "ratified" the decision to charge Plaintiff based on the Elizabeth Police Department's custom. *Id.* at 69:12-24, 102:6-18.[13]

It is undisputed that Hidalgo charged Plaintiff after obtaining the Alcotest results, which showed that Plaintiff did not have any alcohol in his system. Hidalgo's testimony supports a finding that the Elizabeth Police Department has a custom of charging persons, once an arrest has been made, even when officers determine that the charges lack merit. As a result, there are genuine issues of material fact on the issue, and the Court denies summary judgment on Counts Five and Six with respect to Plaintiff's theory of *Monell* liability based on a custom or policy.

### b. Failure to Train

The City also argues that it is entitled to summary judgment on the failure to train and/or supervise theory of *Monell* liability because "the Complaint contains only brief and vague conclusory assertions[14] that Elizabeth Police officers have not been properly trained," and that "discovery in this matter has revealed absolutely no evidence that the City of Elizabeth's training program is inadequate or in any way deficient." *Id.* at 13. In response, Plaintiff submits that the

---

[12] Based on Hialgo's testimony and Lieutenant Niewinski's testimony, the Court understands "Mike Lewinski" to be Lieutenant Michael Niewinski.

[13] There is also other evidence in the record that speaks to this issue. Elizabeth Police Department Lieutenant Michael Niewinski testified that there is no such policy – if an individual was arrested but it was later learned that he or she was not involved in criminal activity, that person should be released with no charges. D.E. 40-5, 54:7-16. Niewinski stated that it was "not accurate" that he told Hidalgo to charge Plaintiff, despite the 0.0 Alcotest, because it was not possible to "un-arrest" Plaintiff. *Id.* at 56:3 to 58:16. Further, Niewinski does not recall Sergeant Vazquez telling Hidalgo that he had to charge Plaintiff. *Id.* Niewinski testified that it is possible to "un-arrest" someone and that he has done it before. *Id.* at 109:5-12. For reasons unknown, the City does not rely on this evidence in its motion, so the Court does not consider it. However, even if the Court did consider the information, Hidalgo's testimony would nevertheless create a genuine dispute of material fact on the issue.

[14] This is an argument in support of a motion to dismiss for failing to plausibly plead a claim. It is not an appropriate at the summary judgment stage.

City failed to train Hidalgo properly because he received no training for identifying the smell of alcohol, he received no  training in distinguishing between an intoxicated person and a person in medical distress, and he believed that he was required to charge anyone arrested with a crime, even if he later believed that person to be innocent.  Pl. Opp. at 30-31.  Plaintiff continues that Hidalgo was not properly supervised because his supervisors instructed him to charge Plaintiff "despite a clear lack of probable cause."  *Id.* at 31.

In this type § 1983 claim, a plaintiff must "(1) identify the deficiency in training; (2) prove that the deficiency caused the alleged constitutional violation; and (3) prove that the failure to remedy the deficiency constituted deliberate indifference on the part of the municipality."  *Wheeler v. City of Jersey City*, No. 12-7528, 2016 WL 1029271, at *4 (D.N.J. Mar. 14, 2016) (quoting *Lapella v. City of Atl. City*, No. 10-2454, 2012 WL 2952411, at *6 (D.N.J. July 18, 2012). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.  Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train."  *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) (internal quotations, citations, and brackets omitted).

Here, there is sufficient evidence in the record from which a reasonable factfinder could determine that the City's training and supervision was constitutionally deficient.  Hidalgo's testimony indicates he did not receive training on the smell of alcohol.  D.E. 35-4, 16:3-5.  It seems obvious that Hidalgo, and other officers who make DWI arrests, would need training on detecting the odor of alcohol.  They would also require training on how to distinguish between an intoxicated person and a person in medical distress.  The City's "DWI Questionnaire" includes the following questions:  "Do you have diabetes?" and "Are you taking insulin?"  D.E. 40-2.  A reasonable

factfinder could conclude that the inclusion of these questions shows the City's awareness that diabetes can be mistaken as DWI.  Hidalgo further testified that he was trained to file charges for anyone he arrested, even if he discovered evidence that the suspect did not commit the crime.  D.E. 35-4, 68:8-21.  Based on Hidalgo's testimony, a reasonable factfinder could conclude that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." (quoting *Harvey v. County of Hudson*, No. 14-3670, 2015 WL 9687862, at *14 (D.N.J. Nov. 25, 2015) (quoting *City of Canton*, 489 U.S. at 390).  As a result, the Court denies the City's motion for summary judgment with respect to Plaintiff's failure to train and/or supervise theory of *Monell* liability in Counts Five and Six.

### 2.  Plaintiff's Tort Claims (Count Fourteen)

Count Fourteen alleges that the City is vicariously liable for the Police Officer Defendants' wrongful acts.  Compl. ¶¶ 105-110.  The City argues that it cannot be held vicariously liable for Hidalgo's alleged willful disregard, assault and battery, abuse of process, false arrest, false imprisonment, and malicious prosecution claims.  City Br. at 15.  As noted, Plaintiff does not intend to pursue claims for willful disregard, assault and battery, and abuse of process.  Pl. Opp. at 5.  As a result, the Court will consider the City's alleged vicarious liability only with respect to false arrest, false imprisonment, and malicious prosecution.  The City raises two arguments for why it cannot be held liable for Plaintiff's tort claims: (1) a public entity is immune from liability for intentional torts; and (2) Plaintiff fails to meet the NJTCA's verbal threshold.

### a.  Immunity from Liability for Intentional Torts

The City first argues that Plaintiff's tort claims fail as a matter of law because a public entity cannot commit an intentional tort and is not liable for intentional torts committed by is employees.  City. Br. at 15-16.  In response, Plaintiff contends that the NJTCA does not prohibit a public entity from liability for its employee's intentional torts and, instead, "only prohibits vicarious liability for 'acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct.'"  Pl. Br. at 34 (quoting N.J. Stat. Ann. § 59:2-10).  Plaintiff continues that, although courts have used the phrase "intentional tort" when discussing the statute, that phrase is misleading because it is not used in the statute, and not every intentional tort would necessarily be covered by the statute.

The NJTCA provides that "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct."  N.J. Stat. Ann. § 59:2-10.  As a result, the City's potential liability in this case depends on whether Hidalgo's challenged actions could be viewed as willful misconduct.  *See Kelly v. County of Monmouth*, 883 A.2d 411, 414 (N.J. Super. Ct. App. Div. 2005). "[W]illful misconduct requires much more than mere negligence"; it falls "somewhere on the continuum between simple negligence and the intentional infliction of harm."  *Alston v. City of Camden*, 7763 A.3d 693, 702 (N.J. 2001) (internal quotation omitted).

A genuine dispute of material fact exists which precludes the Court from determining whether Hidalgo's acts constituted willful misconduct.  The parties dispute whether Hidalgo actually smelled alcohol; this fact is critical to the willful misconduct inquiry.  If Hidalgo lied about smelling alcohol, then his actions underpinning the torts of false arrest, false imprisonment, and malicious prosecution could be considered willful misconduct.  However, if Hidalgo was mistaken about smelling alcohol, then his actions would not amount to willful misconduct. As a

result of this disputed material fact, the Court declines to grant the City's motion for summary judgment on Count Fourteen on the grounds of the City's immunity for liability from intentional torts.

### b. NJTCA Verbal Threshold

The City next argues that Plaintiff's tort claims are barred because they fail to satisfy the $3,600 threshold for his medical treatment expenses, pursuant to N.J. Stat. Ann. § 59:9-2(d).  City Br. at 17.  Plaintiff argues that his failure to meet this threshold "is not an automatic bar to all of Plaintiff's tort claims" because (1) this statutory limitation on damages does not protect an employee for conduct which amounts to a crime, actual fraud, actual malice or willful misconduct"; and (2) this limitation only changes the *type* of damages Plaintiff can recover.  Pl. Opp. at 36, 22-23.

The NJTCA "limits certain damages available to a Plaintiff who brings a claim for injury," including N.J. Stat. Ann. § 59:9-2(d), which "addresses awards for pain and suffering."  *Nieves v. Adolf*, 230 A.3d 227, 235 (N.J. 2020).  This provision – known as the "verbal threshold" – provides, in relevant part:

> [n]o damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.

*Id.* (quoting N.J. Stat. Ann. § 59:9-2(d)).  "The verbal threshold by its terms applies to pain and suffering claims and not to economic damages."  *Id.* at 236.

The parties' respective statements of material facts not in dispute do not address the type of damages Plaintiff seeks, however, the Complaint details that Plaintiff seeks an award of compensatory and punitive damages for: "his personal injuries; pain and suffering; past, present,

and future medical expenses; attorneys' fees; mental anguish; loss of earning capacity; and loss of capacity to enjoy life; as well as his costs, and all other relief the Court deems just and proper." Compl. ¶ 11.  Plaintiff also seeks a declaratory judgment on certain issues and injunctive relief. *Id.* ¶¶ 112-13.  While the record is void of evidence that Plaintiff meets the NJTCA's verbal threshold requirement, this only limits his recovery of pain and suffering damages – the other relief Plaintiff seeks is not subject to this statutory bar.  As a result, the Court denies the City's motion for summary judgment for Count Fourteen based on the NJTCA's verbal threshold.

## IV.    CONCLUSION

For the reasons set forth above, Defendant Hidalgo's motion for summary judgment is **GRANTED in part and DENIED in part**.  Defendant Hidalgo is granted summary judgment on Count One subpart a (stopping and detaining Plaintiff without reasonable and articulable suspicion; and Count Six insofar as it pertains to allegations of use of an unlawful stop.  Hidalgo's motion for summary judgment is denied on all other grounds.  Defendant City of Elizabeth's motion for summary judgment is **DENIED**.  An appropriate Order accompanies this Opinion.


Dated: April 13, 2021


_____
John Michael Vazquez, U.S.D.J.